**SO ORDERED.**

**SIGNED this 19th day of November, 2014.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge
_____

**Designated for print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **In re:** | |
| **LEON FRANCIS HALL,** | **CASE NO. 14-21588** |
| | **CHAPTER 11** |
| **DEBTOR.** | |

### MEMORANDUM OPINION AND ORDER GRANTING DEBTOR'S APPLICATION FOR ENGAGEMENT OF COUNSEL WITH MODIFICATIONS

On July 8, 2014, one day following the filing of the petition in this Chapter 11 case, Debtor Leon Hall filed his Application by Debtor for the Engagement of Counsel. In it he sought approval of employment of Eron Law, P.A. under 11 U.S.C. § 327,[1] effective November 1, 2013, on a contingency fee basis under § 328(a), or alternatively at the rate of $450 per hour. Leo Hall, a creditor and father of the Debtor, and the United

---

[1] Future references to Title 11 in the text shall be by the section number only.

States Trustee filed objections. An evidentiary hearing was held on October 22, 2014. The Debtor appeared in person and by his counsel David Eron, of Eron Law. The United States Trustee appeared by Joyce Owen. Creditor Leo Hall appeared by Christopher W. O'Brian of Brown, Dengler & O'Brian LLC, but did not actively participate in the hearing. There were no other appearances. The Court has jurisdiction.[2]

The United States Trustee argued in its objection that Eron Law is not disinterested, as required for appointment under § 327, because it has a claim for approximately 140 hours of prepetition services, and that the cure is for Eron Law to become disinterested by waiver of its claim. As to the terms of appointment, the United States Trustee argued whatever compensation is approved, that it not be under § 328, which would severely limit the Court's future ability to review the fees to be awarded. The United States Trustee opposed approval of a contingency based fee and suggested that if the Court approves the employment of Eron Law, it should be at the firm's customary hourly rate, with the total fee being subject to review under the reasonableness standard of § 330. In his brief, Leo Hall argues that Eron Law should be compensated on

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). An application to approve the employment of counsel is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

an hourly basis normally charged by Chapter 11 counsel in Wichita, Kansas, where Eron Law's office is located.[3]

**BACKGROUND FACTS**.

Debtor Leon Hall is a farmer. Farming is all that he knows. Until recently, when he became estranged from his father, Debtor farmed with his father, Leo Hall. Currently Debtor is employed part time helping out the farmer who is leasing Debtor's farmland. Debtor suffers from several medical conditions which limit his earning ability. He does not earn enough to pay his living expenses. In the past, Debtor's father provided funds for Debtor's legal expenses, but this source of funding became unavailable when Debtor and his father became estranged.

Mr. Eron, the managing partner of Eron Law, has been representing Debtor since December 2012. At that time, Debtor was upset about the family acrimony and the advice he was receiving from his attorneys who were beholden to his father. Debtor had filed a Chapter 12 case in 2010. The case was unsuccessful and eventually dismissed. But in 2012, the Debtor's former bankruptcy counsel was advising that a new bankruptcy should be filed. Mr. Eron accepted the representation, even though he knew that Debtor had no source of funds to pay fees.

Eron Law became convinced that Debtor would benefit from the filing of a Chapter 11 case. Eron Law and Debtor executed the Chapter 11 Legal Services Agreement, dated

---

[3] This case was filed in the Kansas City, Kansas division of the Federal Bankruptcy Court for the District of Kansas, where the customary fees are significantly higher than in Wichita.

November 6, 2013, which is the subject of the application for appointment. It provides for fees in the amount of 10% of the gross proceeds from all sales of estate assets, subject to the approval of the employment by the Bankruptcy Court. After executing the Legal Services Agreement, significant investigation and prefiling estate planning were undertaken. The representation also included advising Debtor's divorce counsel regarding the division of assets and assisting Debtor's criminal counsel in negotiating a settlement of a potential criminal prosecution. Further details of the representation are discussed below.

Debtor filed a voluntary petition under Chapter 11 on July 7, 2014. Debtor remains in possession of the estate. Since Debtor is not conducting farming operations, this will be a liquidating case. Debtor's primary asset is 9.5 quarter sections of farmland located in Stafford County, Kansas valued at approximately $5 million, subject to approximately $4,350,000 in recorded mortgage liabilities. Sale of the real property will result in significant capital gain tax liability. Personal property is valued at approximately $300,000, but is fully encumbered. Debtor's largest secured creditor is his father, who holds a claim of approximately $1.8 million.[4] There are over 100 creditors. Unsecured claims are approximately $6 million.

Even though the estate appears insolvent, Mr. Eron's goal is to sell the estate assets in a manner which will allow significant distributions to unsecured creditors. Eron Law has the expertise and skill to undertake this representation. Mr. Eron's representation of

---

[4] Doc. 8, 8. (Application by Debtor for the Engagement of Counsel) Debtor's schedules include different values, which may be the nondisputed portions of the claims.

Debtor to date evidences compassion, diligence, and creativity. But several factors make the representation of Debtor difficult and undesirable. Debtor relies upon these details of the representation to argue that this case is unique and warrants approval of employment under § 328 on the basis of a contingency fee calculated to be 10% of the estate's gross proceeds of sale.

To reach his desired outcome of the case, Mr. Eron will have to overcome significant obstacles. The first is deep seated family strife, involving Debtor's father and sister, complicated by his mother's death in 2013. Much of Mr. Eron's optimism of achieving a good outcome is predicated upon his ability to successfully negotiate settlements with Debtor's father.

The second obstacle is maximizing the return from disposition of the farmland. Mr. Eron's investigation shows the possibility that several of the recorded mortgages on the farmland have been paid off. Lien avoidance actions will be necessary to realize this possibility. Mr. Eron has also identified issues about the extent of a prior judgment lien. There are issues about the ownership of irrigation equipment. In addition, Debtor has a low tax basis in the property and the potential of a large tax liability upon sale.

Third, the relationship between Debtor and his father while farming for many years gives rise to the question of whether they were operating a partnership. Mr. Eron proposes to use the existence of a partnership to both reduce the claims against the estate and to recover funds for the estate. He reasons that if Debtor and his father were farming as partners, Debtor may have less than 100% liability for the claims arising from the farming

5

operation.  Mr. Eron is also investigating whether a claim for rent exists against Debtor's father for his use of a portion of Debtor's farmland.  There is also the potential for a legal malpractice action against Debtor's former counsel.

The undesirability of the case arises from the expectation that the representation will require significant time coupled with the risk that the estate will be administratively insolvent and unable to pay fees, or even expenses.  In addition, even if Mr. Eron's plans to maximize the value of the estate are successful, any payment of attorney fees will be substantially delayed.  Eron Law has already represented Debtor for over a year without compensation.  Such delay in payment causes significant disruption for Eron Law, which is essentially a solo practice.

When filing the application, Mr. Eron estimated that after all sales are completed, gross compensation under the 10% contingency fee arrangement would be $500,000.  This amount includes reimbursement of all costs advanced, estimated to be $50,000, resulting in net estimated compensation of $450,000.  Mr. Eron stated that he initially anticipated that the total time devoted to the case would be 540 hours, resulting in a fee of approximately $850 per hour.  Mr. Eron's standard hourly rate is $225 per hour for bankruptcy cases.  By the time of oral argument on the application, Mr. Eron acknowledged that his estimate of the time required was much too low.

**DISCUSSION.**

> **A. The appointment of Eron Law is not precluded because the law firm holds a claim for prepetition services which has not been waived.**

The United States Trustee's first argument is that the employment of Eron Law is precluded because the firm is not disinterested as required for employment. Section 327(a), employment of professional persons, provides, "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Under § 1107, a debtor in possession generally has all the powers of a trustee, and therefore may employ an attorney under § 327(a). Section 101(14)(A) defines a disinterested person to mean a person that "is not a creditor, an equity security holder, or an insider."

Debtor's application states that "Eron Law has spent approximately 140 hours as of the Petition Date devoted exclusively to Debtor's case during the eight months preceding this application."[5] At trial the evidence established that Mr. Eron first provided legal services to Debtor relating to his financial affairs in December 2012. Matters included review of Debtor's 2010 bankruptcy and current financial issues, providing assistance in settling property matters in Debtor's pending divorce, and assisting in negotiating settlement of Debtor's criminal charges which could have resulted in incarceration, thereby making Debtor unavailable for personal participation in a potential bankruptcy. At least by early November, the representation included evaluation and planning for a

---

[5] Doc. 8, 5.

Chapter 11 filing. The Legal Services Agreement between Debtor and Eron Law, P.A. is dated November 6, 2013. On that date, Mr. Eron's time sheets show an office conference with Debtor regarding Chapter 11 and other matters. The first time entry for preparing schedules was in February 2014. Debtor's divorce was finalized on May 15, 2014, and thereafter increasing amounts of time were devoted to preparation of the bankruptcy filing. The bankruptcy petition was filed on July 7, 2014. Other than a small payment of $800 to $1000, Eron Law has not been paid for any of the services provided and has waived any claim for services prior to November 6, 2013.

The United States Trustee claims that because Eron Law has not waived its claim for services between November 6, 2013 and July 7, 2014, Eron Law is not disinterested and the requested appointment is precluded by §§ 327(a) and 101(14)(A). This position is supported by a literal reading of the statutes. Cases cited by the United States Trustee support the position that an attorney holding a prepetition claim for services is not disinterested and cannot be appointed unless the claim is waived.[6] Neither the Debtor nor Leo Hall cite cases addressing the disinterestedness question.

---

[6] E.g., *In re Boot Hill Biofuels, LLC*, 2009 WL 982192 (Bankr. D. Kan. March 27, 2009) (Judge Nugent held that a law firm was not disinterested as required by § 327(a) because it was an involuntary gap creditor under § 502 and it would be disqualified unless it disclosed and waived those fees); *United States Trustee v. Price Waterhouse*, 19 F.3d 138 (3rd Cir. 1994) (clear and unambiguous language of code prohibited debtor in possession from employing former accountant, who was one of the 20 largest creditors, to assist in performing duties in case); *In re Estes*, 57 B.R. 158 (Bankr N.D. Ala. 1986) (employment of attorney whose law firm held a claim against the estate was improper in Chapter 11 case).

The Court's research reveals that some courts decline to apply the definition of disinterested person literally, as urged by the United States Trustee. In *Martin*,[7] the First Circuit, after noting that § 327(a) would at first blush "seem to foreclose the employment of an attorney who is in any respect a 'creditor'", found "such a literalistic reading defies common sense and must be discarded as grossly overbroad."[8] It reasoned that

> to interpret the law in such an inelastic way would virtually eliminate any possibility of legal assistance for a debtor in possession, except under a cash-and-carry arrangement or on a *pro bono* basis. It stands to reason that the statutory mosaic must, at least, be read to exclude as a "creditor" a lawyer, not previously owed back fees or other indebtedness, who is authorized by the court to represent a debtor in connection with reorganization proceedings—notwithstanding that the lawyer will almost instantaneously become a creditor of the estate with regard to the charges endemic to current and future representation.[9]

A bankruptcy court has observed that "most courts have concluded that performance of customary prepetition bankruptcy services, *i.e.*, preliminary work routinely undertaken to facilitate an upcoming bankruptcy filing, does not make the attorney a creditor under § 101(13) and will not serve to disqualify an otherwise eligible attorney from appointment under § 327(a) absent the presence of other disqualifying factors."[10] A respected commentator states, "[e]ven courts that adhere to the *per se* rule have held that

---

[7] *In re Martin*, 817 F.2d 175 (1st Cir. 1987).

[8] *Id*. at 180.

[9] *Id*.

[10] *In re Watson*, 94 B.R. 111, 114 (Bankr. S.D. Ohio 1988).

9

professionals holding claims for services rendered prior to the commencement of the chapter 11 case are not thereby barred from representing the debtor in possession if the services were rendered in preparation for the bankruptcy filing."[11]

The Court agrees with the more liberal construction of the disinterestedness requirement. The evidence, including the testimony and the Court's examination of Mr. Eron's time entries for the prepetition time period, convince the Court that the services were rendered in preparation of the bankruptcy filing and Eron Law should be considered disinterested for purposes of appointment under § 327.

**B. The Court rejects the request that the appointment be under § 328 on a contingency basis.**

Debtor argues that the employment of Eron Law should be under § 328 "because of the substantial risk of non-payment if sales are not consummated, and the further risk of an 'ex post facto' attempt by other parties to reduce the appropriate fee based upon subsequent facts not presently known."[12] The United States Trustee argues that if Eron Law is employed, compensation should be determined under §330 rather than § 328.

Section 330, Compensation of officers, is the generally applicable fee statute. It provides, subject to § 328, for the award of "reasonable compensation for actual, necessary services rendered by the . . . attorney" and "reimbursement for actual, necessary expenses." In the absence of preapproval under § 328, Eron Law's fees would be reviewed

---

[11] 7 *Collier on Bankruptcy*, ¶ 1107.04[3][b] at 1107-16 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. 2014).

[12] Doc. 8, 3.

10

at the conclusion of the case under the § 330 reasonableness standard.[13] In the Tenth Circuit, reasonableness is determined under the adjusted lodestar approach, which takes into account each of the factors stated in § 330(a)(3) plus additional relevant factors as identified in *Johnson v. Georgia Highway Express*.[14]

> Section 328, under which Eron Law seeks approval of a contingency fee, provides:
>
> > The trustee, . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

Therefore, when evaluating an employment agreement under § 328, the Court makes a reasonableness examination of the proposed terms and conditions. If the employment is approved under § 328, the court may not later switch to § 330 to award fees.[15] The standard for review of fees under an agreement approved under § 328 "is that of improvidence 'in light of developments not capable of being anticipated at the time of the

---

[13] *In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002).

[14] *Market Center East Retail Property, Inc. v. Barak Lurie (In re Market Center East Retail Property, Inc.)*, 730 F.3d 1239, 1247 (10th Cir. 2013), referring to *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974).

[15] *In re Airspect Air, Inc.*, 288 B.R. 464, 470 (6th Cir. BAP 2003) rev'd on other grounds 385 F.3d 915 (6th Cir. 2004).

11

fixing of such terms and conditions.'"[16] The court may not revisit its prior determination of reasonableness of the compensation arrangement unless and until it determines that the pre-approved terms and conditions were "improvident in light of developments not capable of being anticipated at the time" of approval.[17] This is a "high hurdle to clear."[18] For example, when special litigation counsel's contingency fee arrangement had been pre-approved under § 328, the bankruptcy court could not reduce the fee award "simply because the size and scope of a settlement had not actually been anticipated, [since] it does not follow that it was *incapable of anticipation*."[19]

In this case, the application seeks approval of employment under the November 6, 2013, Legal Services Agreement between Eron Law and Debtor. As to fees it provides:

> The Firm agrees to accept this case on a contingency fee basis. The fees described hereafter will be accepted to cover all work performed by the Firm in your chapter 11 case, or any proceedings related to your chapter 11 case. The Firm will earn fees only upon the sale of assets owned by you. The Firm agrees to accept a fee equal to 10% of any assets sold by you or the chapter 11 estate, whether sold during your chapter 11 estate pursuant to 11 U.S.C. §363, through a chapter 11 plan, any combination thereof, or any substitute therefore. The sales price shall be calculated on the gross amount of any sale, regardless of any other fees or secured debts that must be paid out of the sale proceeds. The Firm agrees that it will be

---

[16] *Id*. at 471, quoting 11 U.S.C. § 328(a).

[17] *In re Federal Mogul-Global, Inc.*, 348 F.3d 390, 396-97 (3rd Cir. 2003), cited with approval in *In re Market Center East Retail Property, Inc.*, 730 F.3d at 1246, n. 5.

[18] *Riker, Danzig, Scherer, Hyland & Peretti v. Offical Comm. of Unsecured Creditors (In re Smart World Technologies, LLC.)*, 552 F.3d 228, 235 (2nd Cir. 2009).

[19] *Id*.

12

> responsible to take appropriate action to seek recovery of any earned fees through surcharge or pro rata mechanisms in the event that sale proceeds are insufficient to pay all necessary costs, fees, and encumbrances. . . .
>
> COSTS AND EXPENSES. Costs and expenses advanced or paid by the Firm on behalf of you will be paid by the firm and included in the contingency fee identified above.

A substantial portion of Mr. Eron's testimony and the expert opinion report offered by Eron Law was directed at supporting the position that a contingency fee should be approved because of the complexity of this case. As stated in the background facts, the complexity is the result of obstacles which will need to be overcome to reach Mr. Eron's desired outcome for the case. Also, the case is undesirable because of the risk of administrative insolvency and the delay in payment, even if there are sufficient assets.

The Court finds that the issues in this case make it difficult, but not unique. Many Chapter 11 cases have their roots in entrenched family malfunction. The successful outcome of many cases depend upon lien avoidance, favorable handling of tax liabilities, and attempting to shift liability for claims to non-debtors. Debtor's evidence, although indicating that reasonable compensation may be higher than in Chapter 11 cases having similar assets, does not convince the Court that a contingency fee arrangement is reasonable.

In addition, the contingency fee arrangement proposed by the Debtor does not present a solution to the problem that in Chapter 11 cases counsel often undertake representation knowing that there is a significant likelihood of inadequate assets to pay

counsel's administrative claim for fees. As this Court has frequently said, Chapter 11 cases are hourly contingency fee cases. Unless a contingency fee based upon the sale of assets includes a method for priming the interests of secured creditors and other lien holders, which the Eron Legal Services Agreement does not include, the award of the contingency fee, like the award of an hourly fee, is dependent upon the ability of the estate to pay administrative expenses. The provision in the proposed Legal Services Agreement whereby "[t]he Firm agrees that it will be responsible to take appropriate action to seek recovery of any earned fees through surcharge or pro rata mechanisms in the event the sale proceeds are insufficient to pay all necessary costs, fees, and encumbrances"[20] does not solve this problem. Rather, it raises the undesirable potential of litigation between counsel for the debtor-in-possession and lien holders on fee issues.

The Court accepts Mr. Eron's arguments that this case includes factors which would justify a contingency fee in other litigation, such as personal injury cases. The Debtor has no source of funds to pay fees and expenses, costs will be substantial, representation will require many hours of work over several years, and even then a successful out come (in this case, an administratively solvent estate) is uncertain. But this is not a tort case. The interests of creditors must be considered. Counsel for the debtor in possession has significant duties in addition to the sale of assets. To approve a fee based solely upon the gross value of assets sold, could have the inappropriate effect of causing

---

[20] Doc. 8, 17.

14

counsel to focus on asset sales, to the detriment of alternative methods of administering the assets and of other estate issues not involving asset sales, such as recovery of preferential payments. A conflict of interest could arise. The Court, the United States Trustee, and the Debtor have not found any cases where employment of bankruptcy counsel for the debtor in possession was approved on a contingency basis. The cases which approve such arrangements are for appointment of special counsel for limited purposes.[21] The facts of this case are not so compelling that the Court wishes to "plow new ground" and approve a contingency fee for a debtor in possession under § 328.

      The Court also declines to approve employment of Eron Law under § 328 at an hourly rate, as requested in Debtor's application, if the Court does not approve the contingency fee agreement. Representation of the Debtor in this case involves so many unknowns that it impossible for the Court at this stage of the proceedings to determine what issues may arise. There are multiple foreseeable outcomes. On one hand, this case could be concluded quickly with excellent results if a settlement beneficial to the estate is soon reached with Leo Hall. On the other hand, if Leo Hall determines to fully litigate all issues or if the tax issues cannot be resolved, the case could be lengthy and the outcome less desirable. Because a compensation agreement once approved under § 328 can be adjusted only if such terms and conditions prove to have been improvident in light of

---

[21] *E.g., In re Smart World Technologies, LLC*, 552 F.3d 288 (2nd Cir. 2009) (appointment of special litigation counsel to defend adversary complaint regarding price to be paid for Chapter 11 debtor's assets); *In re Barron*, 225 F.3d 583 (5th Cir. 2000) (employment by chapter 7 trustee of counsel to pursue preferential transfer or fraudulent transfer proceeding on a contingency fee basis).

15

developments not capable of being anticipated at the time of the fixing of such terms and conditions, such approval would deprive the Court of the ability to review the reasonableness of the compensation at the completion of the case.

>   **C. Because of the difficulty of this case, as discussed above, the Court will approve the employment of Eron Law under § 327 at the hourly rate of $450.**

As this Court has previously said,

> A bankruptcy court has "'wide discretion' to authorize many types of fee arrangements" for professionals whose employment is approved under § 327. . . . "[A] Bankruptcy Court need not approve or reject an application as presented but may approve an application with modified terms that the Court finds necessary to render the proposed employment reasonable." [22]

For the reasons stated above, the Court will not approve employment of Eron Law under § 327 on either a contingency fee basis or an hourly fee basis under § 328. However, it will approve employment under § 327, at the rate of $ 450 per hour for Mr. Eron's time, the rate he requested in the employment application. The Court will approve employment of other attorneys and non-attorneys affiliated with Eron Law at the firm's customary rates. Eron Law will continue to advance costs. The final fee award will be subject o the reasonableness standard of § 330.

Mr. Eron's rate is substantially higher than his customary rate for Chapter 11 debtor work. It is not, however, substantially higher than fees charged for Chapter 11 debtor work by some lawyers practicing in the United States Bankruptcy Court for the District of

---

[22] *In re Brooke Corp.*, 2013 WL 6782877 (D. Kan. Case 08-22786, Dec. 20, 2013) (citations omitted)

16

Case 14-21588   Doc# 136   Filed 11/19/14   Page 16 of 18

Kansas, the district in which this case was filed.  In the Court's experience, lawyer's fees are market driven.  Among the factors that effect the market are competition for the work, the perceived skill of the lawyer, the actual skill of the lawyer, the availability of the lawyer to do the work to the exclusion of other work, overhead, and the risk of non-payment.  The Court believes that Leon Hall would be unable to find a lawyer with the requisite skills needed to have a reasonable chance of achieving a satisfactory result for Leon Hall at a significantly lower hourly rate.  Approving an hourly rate higher than Eron Law's customary fees is appropriate given the complexity of this case, the professional skill and diligence demonstrated in the Eron Law's representation of Debtor to date, and the undesirable aspects of the representation.  The Court will therefore approve engagement of counsel under § 327 at the foregoing hourly rates, subject to the reasonableness standard of § 330.

**CONCLUSION.**

For the foregoing reasons, the Court denies the Debtor's application to employ Eron Law under § 327, based upon the terms of the November 6, 2013 Legal Services Agreement being approved under § 328.  The Court however will approve employment of Eron Law under § 327 based upon a revised employment agreement in which compensation is based upon the hourly rates set forth above.  Total compensation shall be subject to the reasonableness standard of § 330.  Such appointment shall to retroactive to the case filing date of July 7, 2014, if a revised employment application incorporating a fee

Case 14-21588    Doc# 136    Filed 11/19/14    Page 17 of 18

agreement consistent with this opinion is filed within 14 days of the entry of this Memorandum and Order.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. The order based on this ruling stated above will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

###