**SO ORDERED.**

**SIGNED this 22nd day of April, 2015.**



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br><br>**LEON FRANCIS HALL,**<br><br>        **DEBTOR.** | **CASE NO. 14-21588**<br>**CHAPTER 11** |

**MEMORANDUM OPINION AND ORDER ON DEBTOR'S MOTION FOR
TURNOVER OF HARVESTED CROPS**

On July 29, 2014, Debtor filed his Motion for Turnover in which he seeks an order compelling Debtor's father, Leo Hall, to turnover to the estate the proceeds of 2014 crops grown on nine tracts of farmland then owned by SEJ Farms, LLC and certain personal property.[1] Leo Hall objected.[2] Trial was held on the motion for turnover on December 5, 2014. Debtor appeared in person and by his counsel, David P. Eron, of Eron Law, P.A. Creditor Leo Hall appeared by Christopher W. O'Brien of Brown, Dengler & O'Brien,

---

[1] Doc. 48.

[2] Doc. 81.

LLC. The United States Trustee appeared by Joyce Owen. There were no other appearances. The Court has jurisdiction.[3]

The testimony established the following facts regarding the 2014 crops. Since July 2009, Leo farmed nine tracts of farmland owned by SEJ Farms, LLC, which land is now property of the estate. There were no written leases, and Debtor never discussed the lease terms with his father. Although Leo made certain payments to Debtor, Debtor testified that Leo never paid rent.

On August 22, 2013, Debtor gave written notice of termination of the leases as to the nine tracts, effective March 1, 2014, except for that portion currently planted to a fall-seeded grain crop. As to that portion, if the land had been prepared in conformity with normal practices in the area, the termination date was stated to be the day following the last day of harvesting such crop if harvested after March 1, 2014, or August 1, 2014, which ever day comes first. After the August 22, 2013 notice, Leo planted the fall seeded grain, harvested the grain after March 1, 2014, and sold the grain without giving Debtor any proceeds. Debtor contends that he is entitled to turnover of the 2014 wheat proceeds

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). A motion to turnover property of the estate is a core proceedings which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A) and (E). There is no objection to venue or jurisdiction over the parties.

2

because Leo had not undertaken preparation of the land for planting of 2014 wheat crop as of August 22, 2013.

The termination of farm leases is addressed by K.S.A. 58-2506. The parties agree that the effective date of the August 22, 2013 termination of the leases of the SEJ land devoted to fall planted wheat is controlled by subsection (c), which provides:

> (c) When a notice of termination is given pursuant to subsection (a) after the 30th day preceding March 1 and prior to the planting of a fall seeded grain crop on cropland which has been prepared in conformance with normal practices in the area, in any year in which a fall seeded grain crop has been or will be harvested, the notice shall be construed as fixing the termination of the tenancy of that part of the farm devoted to fall seeded grain crops on the day following the last day of harvesting such crop or crops in the succeeding year or August 1 of such succeeding year, whichever comes first.

It is uncontroverted that when the notice of termination was given on August 22, 2013, Leo had not planted the fall seeded wheat which was harvested in summer of 2014. The factual question is whether Leo had "prepared" the SEJ farmland for the 2014 fall seeded wheat "in conformance with normal practices in the area" before the notice of termination was given on August 22, 2013.

Frank Deines, who provided custom services for Leo for the last five years, testified as to the preparation of the farmland for the planting of the 2014 wheat crop. In 2013, the wheat crop was harvested by July 4. Leo then immediately turned his attention to the 2014 crop, by discussing the type of seed with the agronomist, ordering the seed in July or August, and undertaking insuring and financing of the crop. On no-till land to be

3

fall seeded, it is the practice to spray herbicides within approximately three weeks of harvest, to reduce weed pressure. As to the no-till SEJ farmland, spraying was conducted between July 16 and July 24, 2013, on 228.3 acres of tract 1 (the NE1/4 and S1/2 of NW1/4 of section 19-21-12), 156.1 acres of tract 4 (the SW1/4 of section 9-21-13), 150 acres of tract 5 (the NW1/4 of section 21-21-13), 40 acres of tract 7 (the NE1/4 of section 22-21-13), and 38 acres of tract 9 (the SW1/4 of section 24-21-13). No herbicide spraying was undertaken as to the other farmland in July, 2013.

The question presented is whether the foregoing activities constituted preparation of the land for purposes of K.S.A. 58-2506(c). Decisions of the Kansas Court of Appeals are helpful. A purpose of the 1979 legislature in enacting subsection (c) was to "accommodate the tenant who had worked the ground but not planted the fall crop at the time notice was given."[4] When interpreting subsection (c), the court has stated that "the purchase of personal property in the form of farm equipment is not what the legislature contemplated when it refers to preparation in subsection . . . (c),"[5] and "mere intention to plant a crop is not sufficient to bring the tenant within the protections afforded by 58-2506(c)."[6] To extend the termination date from March 1 until after the harvest of the fall seeded crop, the statute requires that when the notice is given the crop land be "prepared in conformance with normal practices in the area."

---

[4] *Mendenhall v. Roberts*, 17 Kan. App.2d 34, 40, 831 P.2d 568, 573 (1992).

[5] *Buckle v. Caylor*, 10 Kan. App.2d 443, 448, 700 P.2d 979, 983 (1985).

[6] *Orebaugh v. Leatherwood*, 27 Kan. App.2d 730, 733, 8 P.3d 55. 58 (2000).

4

Based upon these authorities, Court finds that discussing the type of seed with the agronomist, ordering the seed in July or August, and undertaking insuring and financing of the crop do not constitute preparation of the land. They evidence intent to plant the next year's crop, but they are not activities preparing the land.

The testimony established that the normal practice in the area for no-till land is to apply chemical spraying within approximately three weeks of the spring/summer harvest. As to the tracts in issue, this spraying was completed on all or portions of tracts 1, 4, 5, 7, and 9 in July 2013, before the August 22, 2013 notice was given. The Court finds that this spraying prepared the land for future seeding of the 2014 crop. Leo Hall had a right to harvest and retain the proceeds of any wheat he planted on this land in the fall of 2013.

The normal practice is not to apply such chemicals to tilled land shortly after harvest. Except for the July spraying of the no-till land described above, there is no evidence that any preparation was undertaken on Debtor's other farmland before the notice of termination of leases was given on August 22, 2013, so the leases for this land were terminated as of March 1, 2014. Leo is not entitled to retain the proceeds from the harvest of any 2014 wheat planted on the land which was not sprayed in July 2013.

The evidence is not sufficient for the Court to determine additional, such as the terms of the oral or implied leases or the precise land on which Leo planted and harvested fall seeded wheat. The Court therefore cannot provide the parties with a more specific ruling on the motion for turnover. However, based upon these findings, the Court

anticipates that the parties may be able to agree on the value of the 2014 wheat proceeds owed to Debtor.[7] If not, the parties may request an additional hearing.

**IT IS SO ORDERED.**

###

---

[7] As stated at the trial, in the absence of evidence to the contrary as to the terms of the oral leases, the Court would rule that the leases were in accord with the terms customary in the area, including division of sale proceeds on a two-third/one-third basis.